UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:24-cv-00050-AB-MAR | Date: | April 10, 2024 |
|---|---|---|---|

| Title: | *Martray Reese v. Daikin Comfort Technologies Distribution, Inc.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**  **[In Chambers] ORDER DENYING MOTION TO REMAND**

Before the Court is Plaintiff Martray Reese's ("Plaintiff") Motion to Remand Removed Action to State Court and Request for Expenses and Fees Pursuant to 28 U.S.C. § 1447 ("Motion," Dkt. No. 16). Defendant Daikin Comfort Technologies Distribution, Inc. ("Defendant") filed an opposition and Plaintiff filed a reply. (Dkt. Nos. 20, 21.) For the following reasons, the Court **DENIES** the Motion.

**I.   BACKGROUND**

Plaintiff is a citizen of California and Defendant is a citizen of Texas. *See* Compl. (Dkt. No. 1-1) ¶¶ 1–2. Defendant engages in the HVAC distribution business. *Id.* ¶ 3. Plaintiff began working as a warehouse associate for Defendant in approximately April 2023. *Id.* ¶ 11. Plaintiff earned $19.00 per hour and worked approximately 40 hours per week. *See id.* ¶ 11; Mot. at 13. On July 5, 2023, Plaintiff was using a box cutter when the box cutter fell and pierced his knee. *Id.* ¶

12. Plaintiff informed his manager, who sent him to urgent care, and Plaintiff returned to work that same day. *Id.* After the incident, Plaintiff began receiving regular disciplinary write-ups, including formal write-ups related to his knee injury and using an unapproved box cutter, tardiness, and forklift operation. *See id.* ¶¶ 13-16. On July 21, 2023, Plaintiff was terminated for too many write-ups. *See id.* ¶ 17. Plaintiff alleges that he "was left embarrassed, ashamed, emotionally hurt, and in financial desperation for having been directly discriminated and retaliated against for having a disability, needing and/or requesting a reasonable accommodation, and taking a medical leave of absence to treat his disability." *Id.* ¶ 18.

On November 29, 2023, Plaintiff filed a Complaint in the California Superior Court for the County of Los Angeles, asserting 6 claims: (1) disability discrimination, (2) failure to provide a reasonable accommodation, (3) failure to engage in a good faith interactive process, (4) retaliation, (5) failure to prevent discrimination, and (6) wrongful termination in violation of public policy. *See generally id.* Plaintiff seeks damages for lost wages and benefits, emotional distress, punitive damages, and attorneys' fees. *Id.*

On January 3, 2024, Defendant timely removed the case to this Court on the basis of diversity jurisdiction. *See* Notice of Removal ("NOR") (Dkt. No. 1) ¶ 6. Defendant alleges that the parties are citizens of different states and the amount in controversy exceeds $75,000. *See id.* To establish the amount in controversy, Defendant relies on Plaintiff's hourly wage rate and verdicts from other employment cases to estimate Plaintiff's potential damages. *See id.* ¶¶ 17–22.

Plaintiff now moves to remand this case to the California Superior Court. Plaintiff asserts that Defendant has not met its burden to show that the amount in controversy meets the jurisdictional requirement. *See* Mot. at 9. Plaintiff argues that (1) Defendant's calculation of Plaintiff's economic damages is insufficient and below $75,000; (2) Defendant's estimations of emotional distress damages and punitive damages are based on speculation and its cited cases are factually distinguishable; and (3) Defendant's calculation of attorneys' fees is speculative. *See id.*

## II.   LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal court. 28 U.S.C. § 1441(a). The removal statute is strictly construed against removal. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of

establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Thus, "[i]f it is *unclear* what amount of damages the plaintiff has sought, . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Id.* at 566–67. If any doubt exists as to the right of removal, federal jurisdiction must be rejected. *Id.*

Federal diversity jurisdiction exists where the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The amount in controversy, for purposes of diversity jurisdiction, is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). "[T]his includes any result of the litigation, excluding interests and costs, that 'entails a payment' by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016). "Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018). "[I]n assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). But "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,]" courts apply a preponderance of the evidence standard, which requires the defendant to provide evidence showing that it is more likely than not that the $75,000 amount in controversy is met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). In considering whether the removing defendant has satisfied its burden, the court "may consider facts in the removal petition" and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas. Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)). "[A] damages assessment may require a chain of reasoning that includes assumptions . . . [but] those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199.

## III.  JUDICIAL NOTICE

Plaintiff requests the Court to take judicial notice of rulings from other cases, attached as Exhibit F to the Declaration of Giuliano Dorian in support of Plaintiff's motion to remand (Dkt. No. 17):

1. Order Remanding Case on January 5, 2023, in *Samuel Ramirez v. Builder Services Group, Inc.,* United States District Court Central District of California, Case No. EDCV 22-1571 JBG (KKx).

2. Order Remanding Case on May 28, 2020, in *Paulina Cruz v. Quest Diagnostics Clinical Laboratories*, United States District Court, Central District of California, Case No. 2:20-cv-04337-RGK-SK.

3. Order Remanding Case on April 3, 2019, in *Rocio Monarrez v. Walmart Associates, Inc.*, United States District Court, Central District of California, Case No. CV19-00411-RGK (GJSx).

4. Order Remanding Case on July 24, 2015, in *Francisco Toral v. Sodexo, Inc.*, United States District Court Central District of California, Case No. CV 15-2385 PA (MRWx).

5. Order Remanding Case on November 12, 2015, in *Monica Sevilla v. Life Care Centers of America, Inc.*, et al. United States District Court Central District of California, Case No. CV15-5977 PSG (GJSx).

6. Order Remanding Case on May 6, 2014, in *Lilian Jeannette Galeano v. AMB Janitorial Services, Inc.*, United States District Court Central District of California, Case No. CV 14-3117 DSF (MANx).

A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Federal Rule of Evidence 201 permits a court to take judicial notice of a fact not subject to reasonable dispute that is either "generally known" in the community, or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice of undisputed matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Court orders and filings may be properly noticed. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take judicial notice of proceedings in other courts, both within and

without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation marks and citation omitted). Accordingly, the Court **GRANTS** Plaintiff's request for judicial notice, as the court orders are public records and relate to matters before the Court.[1]

## IV. DISCUSSION

The parties do not dispute that they are citizens of different states, as required by Section 1332(a). Accordingly, the only issue for the Court to decide is whether Defendant has established that the amount in controversy exceeds $75,000. Plaintiff's Complaint seeks "past and future economic and non-economic damages," attorneys' fees, and punitive damages, but does not specify the amount of damages.

### A. Economic Damages (Lost Wages)

Plaintiff alleges that "as a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer losses in earnings and other benefits and will for a period of time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished." *See, e.g.,* Compl. ¶ 83. Defendant contends that Plaintiff could potentially seek $57,600 in lost wages, exclusive of lost benefits and any future wages, based on the length of time from Plaintiff's termination through a trial date a year after removal (approximately 17 months). *See* NOR ¶ 17.

Plaintiff challenges Defendant's calculation of lost wages on two grounds.

First, Plaintiff contends that Defendant's calculation of lost wages fails to consider Plaintiff's duty to mitigate. *See* Mot. at 12. Plaintiff asserts that its mitigation efforts should be considered in determining the amount in controversy in this case, and further requests the Court to follow *Lamke v. Sunstate Equipment Co., LLC*, 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004), where the court acknowledged that a plaintiff's "entitlement to lost wages may be reduced by his alternative employment." *See* Reply at 2-3. However, binding precedent counsels against considering affirmative defenses such as mitigation in determining the amount in controversy. *See Greene v. Harley-Davidson*, 965 F.3d 767, 774 (9th Cir. 2020) ("The district court erred in considering the merits of … affirmative

---

[1] Plaintiff also requests the Court to take judicial notice of one of these rulings in support of its Reply. (Dkt. No. 22.) As discussed, Plaintiff's request is granted.

defense to determine the amount in controversy."); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("[T]he amount in controversy reflects the maximum recovery the plaintiff could reasonably recover."); *Geographic Expeditions, Inc. v. Est. of Lhotka ex. rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("[J]ust because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense."). "[I]f a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Geographic Expeditions*, 599 F.3d at 1108. Accordingly, the Court rejects Plaintiff's duty to mitigate argument because mitigation is inapplicable to the amount in controversy calculation. *See id.*; *Jackson v. Compass Grp. USA, Inc.*, 2019 WL 3493991, at *4 (C.D. Cal. July 31, 2019) ("[M]itigation of damages is an affirmative defense, and a potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction.") (internal citations and quotations omitted).

Next, the parties dispute the time period over which Plaintiff's lost wages should be calculated. Plaintiff argues that Defendant's calculation of lost wages, from the date of Plaintiff's termination to a trial date set for a year after removal, is speculative and overreaching. *See* Mot. at 12–13. Plaintiff asserts that the calculation of lost wages should be determined "as of the date of removal." *See* Mot. at 12. Plaintiff estimates lost wages of $15,200, by calculating wages from Plaintiff's final paycheck on August 4, 2023 to the date of removal (approximately 5 months)—*i.e.*, $19 per hour x 40 hours per week x 20 weeks. *See id.* However, this calculation does not consider Plaintiff's claim for future wages. *See* Opp'n at 5–6; Compl. ¶ 83 (alleging that Plaintiff has suffered and *continues to suffer* losses in earnings and other benefits) (emphasis added). Plaintiff fails to address contrary binding Ninth Circuit precedent, which has been cited by Defendant.

Contrary to Plaintiff's contention, jurisdiction is ascertained at the time of removal and "includes all relief claimed … to which the plaintiff would be entitled if she prevails." *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417–18 (9th Cir. 2018) ("When we say that the amount in controversy is assessed at the time of removal, we mean that we consider damages that are claimed at the time the case is removed by the defendant.").[2] "If a plaintiff claims at the time of removal that her

---

[2] In the Notice of Removal, Defendant's lost wages estimation of $57,760 is for "back wages alone" and "does not include any future wages." *See* NOR ¶ 17. While in its Opposition, Defendant asserts that its calculation includes "back pay" and "front pay." *See, e.g.,* Opp'n at 6

termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are "at stake" in the litigation, whatever the likelihood that she will actually recover them." *Id.* Plaintiff relies on Central District and Northern District cases which pre-date *Chavez* and non-binding authority from the Third Circuit to support its proposition that the Court should not consider wages post-removal. *See id.* at 12–13. "Since *Chavez*, district courts consistently have included as part of the amount in controversy future wages up to the expected date of trial in this action." *Ulloa v. California Newspaper Partners*, 2021 WL 6618815, at *6 (C.D. Cal. Oct. 21, 2021) (emphasis in original) (collecting cases).

Here, the Complaint at the time of removal claims damages for past and future earnings. Future lost earnings, or "front pay," are "at stake" in this case and are therefore included in the amount in controversy. *See id.* Where a trial date is not yet set, courts in employment cases have found that a year from the date of removal is a conservative estimate for front pay. *See Mendoza v. QVC Inc.*, No. 520CV01595, 2021 WL 633023, at *3 (C.D. Cal. Feb. 18, 2021); *Reyes v. Staples Office Superstore, LLC*, No. 19-CV-07086, 2019 WL 4187847, at *3 (C.D. Cal. Sept. 3, 2019) (citing *Fisher v. HNTB Corporation*, No. 2:18-CV-08173, 2018 WL 6323077, at *5 (C.D. Cal. Dec. 3, 2018)).

The parties do not dispute that Plaintiff earned $19 per hour, worked approximately 40 hours per week, and was terminated on July 21, 2023. Defendant removed this action on January 3, 2024. The parties have not set a trial date; however, one year from the date of removal is a conservative estimate of the trial date. *See* NOR ¶ 24; *see also Mendoza*, at *3. Thus, the Court applying a one-year prospective trial date, calculates lost wages (back pay and front pay) from the date of Plaintiff's termination, July 21, 2023, until a trial date one year from removal, or January 3, 2025 (a period of 76 weeks). Based on Plaintiff's hourly rate of $19 and 40-hour work week, over a period of 76 weeks, the total amount of lost wages at stake is at least $57,760.

While the Court declines to quantify the exact value of Plaintiff's "other benefits," the benefits are more likely than not to be more than nominal. *See*

---

n.5 ("$18,240 (backpay at time of removal) + $39,520 (front pay) = $57,760.") To be clear, the Court's lost wages calculation includes back pay (from termination until removal) and front pay (from removal until trial). *See Ulloa*, at *6; *Olvera v. Quest Diagnostics*, No. 219CV06157, 2019 WL 6492246, at *2 (C.D. Cal. Dec. 2, 2019) ("For purposes of determining the amount in controversy, courts have considered back pay as the wages lost from the date of termination to the time of removal, and front pay as the wages lost from the date of removal until trial.").

*Melendez v. HMS Host Family Restaurants, Inc.,* No. CV 11-3842, 2011 WL 3760058, at *3 (C.D. Cal. Aug. 25, 2011) (the Court may also include other benefits in the lost wages analysis). In other words, the benefits are at least $1.

### B. Non-Economic Damages (Emotional Distress)

Plaintiff's Complaint seeks an unspecified amount of damages for emotional distress.[3] *See* Compl. ¶¶ 26–27, 37–38, 48–49, 60–61, 72–73, 84–85. Emotional distress damages are properly considered in the amount in controversy for jurisdiction purposes. *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029,1034. "To establish the amount of emotional distress in controversy, a defendant may introduce evidence of jury verdicts in other cases." *Cain*, 890 F. Supp. 2d at 1250 (citing *Rivera v. Costco Wholesale Corp.*, No. C 08-02202, 2008 WL 2740399, at *1 (N.D. Cal. July 11, 2008)).

In the Notice of Removal, Defendant calculates Plaintiff's emotional distress damages by "conservatively estimating" the damages "at two times his alleged back wages owed" and arrives at $115,520. *See* NOR ¶ 20. In its Opposition, Defendant cites several wrongful termination cases where emotional distress damages ranged from $56,881 to $2.25 million. *See* Opp'n at 7–10.

At least one of the cases Defendant cites is analogous to the present case. In *Spaulding v. Shannon Diversified, Inc.*, No. CIVDS1609525, JVR No. 1910040037 (Cal. Super. Apr. 25, 2019), the plaintiff was a business development manager for the defendants and suffered a shoulder injury while performing an inspection a few months into the job. A doctor released plaintiff to return to work the same day, with some restrictions which the plaintiff claimed would not affect his ability to perform his main duties. His employment was terminated later that

---

[3] The Court notes that Plaintiff alleges that he has "suffered general damages as he was psychologically injured [and] [s]uch injuries have caused, and continue to cause, Plaintiff great mental pain and suffering in an amount in excess of [the Superior Court's] minimal jurisdiction." *See* Compl. ¶¶ 26–27, 37–38, 48–49, 60–61, 72–73, 84–85. In California Superior Court, a case with an amount in controversy of $25,000 or below is designated as a "limited" civil action, while a case where the amount exceeds $25,000 is designated as an "unlimited" civil action. *See* Cal. Code Civ. Proc. § 88; *Ytuarte v. Superior Court*, 129 Cal. App. 4th 266, 274 (Cal. Ct. App. 2005). Plaintiff indicated in the state court civil case cover sheet that this is an "unlimited" civil action. *See* NOR, Ex. A. Therefore, based on the Complaint, emotional distress damages may more likely than not be at least $25,000.01. *See Ulloa*, at *7.

evening purportedly for his behavior and attitude. The plaintiff brought an employment discrimination action against the defendants. The plaintiff received, among other relief, $56,881 in emotional distress damages. In his Reply, Plaintiff argues that this case is not analogous to the present case because unlike the plaintiff in *Spaulding*, Plaintiff's primary work was physical labor which was limited by his injury and Plaintiff was allowed to return to work following his knee injury. *See* Reply at 8–9. The Court disagrees. Like the plaintiff in *Spaulding*, a few months into the job Plaintiff endured a physical injury on the job, he was released from urgent care to return to work the same day, and was terminated shortly thereafter for purported disciplinary issues. Therefore, the Court accepts Defendant's contention that emotional distress damages are at least $56,881.

Defendant also raises that Plaintiff has alleged that he "will be required to employ physicians and incur additional medical and incidental expenses," but Plaintiff has failed to present evidence indicating that this is no longer the case and therefore this will only increase the amount the controversy. *See* Opp'n at 6–7; Compl. ¶¶ 27, 38, 49, 61, 73, 85. Defendant does not present any evidence quantifying these medical expenses, however. The Court therefore cannot speculate as to the amount of medical expenses that are in dispute and can only estimate that Plaintiff may be awarded more than a nominal amount.

In sum, considering the lost wages and emotional distress damages, the Court finds that Defendant has established that the amount in controversy exceeds $75,000. Because the Court finds that the amount in controversy exceeds $75,000 with the lost wages and emotional distress damages, alone, it need not determine the amount at stake with respect to punitive damages and attorneys' fees.[4]

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**.

**IT IS SO ORDERED**.

---

[4] Defendant argues that the Court could follow cases which estimate at least $30,000 in attorneys' fees, which is "exceedingly conservative given current hourly rates." *See* Opp'n at 14 n.9; *see also Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015). The Court agrees that this is a reasonable and conservative estimate of potential attorneys' fees. Thus, inclusion of $30,000 in attorneys' fees would push the amount in controversy in this case well over $75,000.